UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| JOHN DOE, | Case No. 15 MC 00023-GLS-CFH |
| Petitioner/Judgment Creditor, | |
| -against- | |
| EJERCITO DE LIBERACION NACIONAL, a/k/a ELN, a/k/a National Liberation Army, and FUERZAS ARMADAS REVOLUCIONARIOS DE COLOMBIA, a/k/a FARC, a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA, | |
| Defendants/Judgment Debtors, | |
| -and- | |
| THE BANK OF NEW YORK MELLON, | RESPONDENT THE BANK OF NEW YORK MELLON'S ANSWER TO PETITION FOR FOR TURNOVER ORDER, COUNTERCLAIM, AND THIRD-PARTY PETITION IN INTERPLEADER |
| Respondent. | |

_____

THE BANK OF NEW YORK MELLON,

    Third-Party Petitioner,

  -against-

KEITH STANSELL, MARC GONSALVES, THOMAS HOWES, JUDITH G. JANIS, GREER C. JANIS, MICHAEL I. JANIS, CHRISTOPHER T. JANIS, JONATHAN JANIS, ANTONIO CABALLERO, GRUPO ARPOSFRAN EMRE PARTICACOE (A/K/A GRUPO AROSFRAN EMPREENDIMENTOS E PARTICIPACOES S.A.R.L.), OVLAS TRADING, S.A., BANCO AFRICANO DE INVESTIMENTOS, ANGOLA and STANDARD CHARTERED BANK,

    Third-Party Respondents.

_____

Respondent The Bank of New York Mellon ("BNY Mellon"), by its attorneys, Levi Lubarsky Feigenbaum & Weiss LLP, for its answer to "Petitioner John Doe's Petition For Turnover Order Directed At Bank of New York Mellon" (the "Petition"), and for its counterclaim and third-party petition in interpleader, alleges as follows:

1. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the "Introduction" to the Petition, except admits that a judgment has been entered in favor of Petitioner John Doe ("Doe" or "Petitioner") and against the Revolutionary Armed Forces of Colombia (the "FARC") and Ejercito De Liberacion Nacional ("ELN") (the "Judgment"), that the Judgment has been registered in this district, that a writ of execution was issued by this Court, and that Doe, by the Petition, seeks to collect on the Judgment.

2. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the Petition, except admits that Doe obtained the Judgment.

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the Petition.

4. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the Petition.

5. Admits the allegations of paragraph 4 of the Petition, except denies the specific amounts of assets and funds under management stated therein.

6. Admits the allegations set forth in paragraph 5 of the Petition.

7. Admits the allegations set forth in paragraph 6 of the Petition, except states that insofar as the allegations in paragraph 6 purport to state a legal conclusion, no response is required.

8.     Admits the allegations of paragraph 7 of the Petition.

9.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 8 of the Petition.  To the extent the allegations in paragraph 8 purport to state a legal conclusion, no response is required.

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Petition.  To the extent the allegations in paragraph 9 purport to state a legal conclusion, no response is required.

11.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Petition, except admits that venue in this district is proper.

12.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Petition, except admits that Doe obtained the Judgment against the FARC and ELN, and that the Judgment has been registered in this district.

13.    Admits that portion of paragraph 12 of the Petition that alleges that Doe served a restraining notice on BNY Mellon.  To the extent the allegations in paragraph 12 purport to state a legal conclusion, no response is required.

14.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Petition, except admits that the Court issued a writ of execution, and that the writ was eventually served on BNY Mellon.  To the extent the allegations in paragraph 13 purport to state a legal conclusion, no response is required.

15.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 of the Petition, except admits that BNY Mellon has in its custody a blocked account established upon its block of a wire transfer to which Grupo

Arposfran Emre Particacoe (a/k/a Grupo Arosfran Empreendimentos e Participacoes S.A.R.L.) ("Grupo") and Ovlas Trading, S.A. ("Ovlas") were parties. To the extent the allegations in paragraph 14 purport to state a legal conclusion, no response is required.

16. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of the Petition, except admits that BNY Mellon blocked a wire transfer initiated by Grupo for the benefit of Ovlas and placed the proceeds of the blocked wire transfer into a blocked account pursuant to regulations issued by the Office of Foreign Assets Control ("OFAC") of the United States Treasury Department. To the extent the allegations in paragraph 15 of the Petition purport to state a legal conclusion, no response is required.

17. Admits the allegations set forth in paragraph 16 of the Petition.

18. The allegations set forth in paragraph 17 of the Petition purport to state a legal conclusion to which no response is required.

19. The allegations set forth in paragraph 18 of the Petition purport to state a legal conclusion to which no response is required.

20. The allegations set forth in paragraph 19 of the Petition purport to state a legal conclusion to which no response is required.

21. The allegations set forth in paragraph 20 of the Petition purport to state a legal conclusion to which no response is required.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21 of the Petition, except admits that the FARC and ELN have been designated as SDGTs.

23. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22 of the Petition, except admits that OFAC has designated Grupo and Ovlas as specially designated global terrorists ("SDGTs").

24. Admits that the United States District Court for the Middle District of Florida issued the order referred to in paragraph 23 of the Petition, and respectfully refers the Court to the order for its precise terms. To the extent the allegations in paragraph 23 purport to state a legal conclusion, no response is required.

25. Admits that Doe has annexed to the Petition the affidavit of David L. Gaddis referred to in paragraph 24 of the Petition, and respectfully refers the Court to the affidavit for the precise statements made therein. To the extent the allegations in paragraph 24 purport to state a legal conclusion, no response is required.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25 of the Petition. To the extent the allegations in paragraph 25 purport to state a legal conclusion, no response is required.

27. The allegations set forth in paragraph 26 of the Petition purport to state a legal conclusion to which no response is required.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the Petition, except admits that Doe holds the Judgment, and that BNY Mellon has in its custody a blocked account whose underlying blocked wire transfer involved Grupo and Ovlas.

29. The allegations set forth in paragraph 28 of the Petition purport to state a legal conclusion to which no response is required.

30. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 29 of the Petition. To the extent the allegations in paragraph 29 purport to state a legal conclusion, no response is required.

31. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30 of the Petition. To the extent the allegations in paragraph 30 purport to state a legal conclusion, no response is required.

32. Admits the allegations set forth in paragraph 31 of the Petition.

33. Denies the allegations set forth in paragraph 32 of the Petition.

## FIRST AFFIRMATIVE DEFENSE

34. The Petition fails to state a claim on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

35. Persons and entities other than Doe may have interests in or rights to the blocked account, held at BNY Mellon, that is the subject of the Petition, and those interests or rights may be superior to Doe's right, if any, to execute on the blocked account to satisfy the Judgment. Such persons and entities include parties to or participants in the wire transfer underlying the blocked account, and other judgment creditors of the FARC or ELN who have served writs of execution or other forms of process or notice of their claims.

## THIRD AFFIRMATIVE DEFENSE

36. The funds in the blocked accounts at issue, having been blocked pursuant to OFAC regulations, cannot be transferred to Petitioner or anyone else except pursuant to either a license issued by OFAC permitting such a transfer or a final judgment under § 201 of the Terrorism Risk Insurance Act of 2002, Pub. Law No. 107-297 (codified following 28 U.S.C. § 1610) ("TRIA") after the Court's determination that Petitioner has met his burden of proof on

all of the elements of a claim under TRIA § 201(a), including the requirement that the property, debt or asset to be levied on is a "blocked asse[t] of . . . [a] terrorist party (including . . . any agency or instrumentality of that terrorist party)" and therefore subject to execution.

## FOURTH AFFIRMATIVE DEFENSE

37.     Petitioner has failed to name as respondents, and thereby bring before the Court, certain indispensable parties under Fed. R. Civ. P. 19, all of whom may have an interest in or claim to the funds in the blocked account at issue.  Unless all such potentially interested parties are brought before the Court, BNY Mellon will likely be unable to obtain an appropriate discharge in the event it were directed to turn over to Doe the funds in the blocked account.

## FIFTH AFFIRMATIVE DEFENSE

38.     Grupo and Ovlas contend that, contrary to the findings of the United States District Court for the Middle District of Florida, they are not agencies or instrumentalities of the FARC, and that none of their assets, blocked or otherwise, are therefore subject to execution under TRIA.  Grupo and Ovlas have both appeared in this case, and both intend to seek a judicial determination that they are not agencies or instrumentalities of the FARC.  If they obtain such a determination, then the funds in the blocked account at issue cannot be turned over to Petitioner.

## SIXTH AFFIRMATIVE DEFENSE

39.     The blocked account at issue is not subject to execution under governing law. Under the Second Circuit Court of Appeal's recent decisions in *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014) ("*Calderon-Cardona"*), and *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014) ("*Hausler"*), a blocked wire transfer, held by an intermediary bank, is subject to execution as property of a foreign state judgment debtor "only where either the state itself or an agency or instrumentality thereof (such

7

as a state-owned financial institution) transmitted the EFT [i.e., an electronic funds transfer or wire transfer] directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona*, 770 F.3d at 1002; *Hausler*, 770 F.3d at 212. As to the blocked account at issue, Grupo, as the alleged instrumentality of the FARC that originated the wire transfer underlying the blocked account, did not make such a direct transmission to BNY Mellon. Under *Calderon-Cardona* and *Hausler*, accordingly, that alleged instrumentality lacks a property interest in the blocked account, which in turn is immune from execution under TRIA § 201.

## COUNTERCLAIM AND THIRD-PARTY PETITION IN INTERPLEADER

As a counterclaim against Doe, and as a third-party claim in interpleader against the third-party respondents identified above and described below, BNY Mellon alleges as follows:

A.  **Nature of the Counterclaim and Third-Party Claim**

BNY Mellon files its third-party petition pursuant to Fed. R. Civ. P. 22, Sections 1335 and 2361 of Title 28, United States Code, Section 134 of the New York Banking Law, and New York Civil Practice Law and Rules ("CPLR") §§ 1006 and 5239 for a judicial determination of the rights, if any, of Petitioner, the third-party respondents, and any other persons or entities to the funds in the blocked account that is the subject of the Petition (the "Blocked Account"). The Blocked Account was established upon BNY Mellon's block of a wire transfer on or about October 13, 2009 pursuant to sanctions regulations, 31 C.F.R. § 594.310, issued by OFAC and applicable to persons or entities designated by OFAC as SDGTs.

68.  Petitioner now seeks an order under TRIA and CPLR § 5225(b) directing BNY Mellon to turn over to him, in partial satisfaction of the Judgment, the funds in the Blocked Account. But other persons also have an interest in or claim to those funds, including other judgment creditors of the FARC and other parties to the wire transfer underlying the Blocked

Account, particularly Grupo and Ovlas, both of which assert that they are not SDGTs and otherwise are not instrumentalities of the FARC. BNY Mellon has accordingly filed the counterclaim and third-party claim set forth in this pleading in order to bring all such persons before the Court and give them the opportunity to assert any claims they may have to the Blocked Account so that the Court can determine to whom, if anyone, the funds in the Blocked Account should be turned over. This proceeding is also necessary to enable BNY Mellon, in the event it is directed to turn over the funds in the Blocked Account, to obtain a discharge that is binding on all interested parties and that thereby eliminates the risk that the bank would be subject to double or multiple liability as a result of inconsistent rulings in different forums.

B.    Jurisdiction and Venue

40.    This Court has subject matter jurisdiction over the third-party claim asserted herein (i) pursuant to 28 U.S.C. § 1331, because the claim arises under the laws and treaties of the United States, in particular TRIA; (ii) pursuant to 28 U.S.C. § 1367, because the matters at issue in this proceeding are so related to Doe's Petition, which itself is within the Court's original jurisdiction, that they form part of the same case or controversy; and (iii) pursuant to 28 U.S.C. § 1335, because the third-party claim is in the nature of interpleader, BNY Mellon has in its custody or possession property of the value or amount of $500 or more, and two or more adverse claimants named as third-party respondents are, upon information and belief, of adverse citizenship.

41.    Upon information and belief, venue of the counterclaim and third-party claim asserted in this third-party petition is properly set in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims – including Doe's registration of his judgment in this Court, Doe's delivery of a writ of execution to the

9

United States Marshal's Office for the Northern District of New York (the "NDNY Marshal"), and the filing of the Petition – occurred in this district and the Blocked Account is located here.

C.     The Parties

42.     Third-party petitioner BNY Mellon is a New York State chartered banking institution with its principal place of business in the County and State of New York.

43.     Petitioner and counterclaim respondent Doe is the plaintiff in an action entitled John Doe v. Ejercito de Liberacion Nacional, et al., No. 10-21517-CIV-HUCK, in the United States District Court for the Southern District of Florida, in which Doe recovered the Judgment – a judgment, entered on January 5, 2012, in the amount of $36,800,000.00 against the FARC and ELN.  Upon information and belief, Doe is a citizen of Venezuela and a resident alien in the United States.

44.     Third-party respondents Keith Stansell, Marc Gonsalves, Thomas Howes, Judith G. Janis, Christopher T. Janis, Greer C. Janis, Michael J. Janis and Jonathan N. Janis (the "Stansell Respondents" or the "Stansells") were plaintiffs in an action entitled Keith Stansell, et al. v. Revolutionary Armed Forces of Colombia (FARC), et al., No. 09-CV-02308-RAL-MAP, in the United States District Court for the Middle District of Florida (the "Stansells' Florida Proceeding"), in which they recovered a judgment, entered on June 15, 2010, in the amount of $318,030,000 against the FARC, among others.  By order dated July 22, 2015, the court in the Stansells' Florida Proceeding ruled that it lacked *in rem* jurisdiction over the Blocked Account and other assets located outside Florida and vacated writs of garnishments that the Stansells had previously served on BNY Mellon and other garnishee banks.  The Stansells then commenced a new proceeding, also entitled Keith Stansell, et al. v. Revolutionary Armed Forces of Colombia (FARC), et al., No. 15-cv-06826, in the United States District Court for the Northern District of

Illinois (the "Stansells' Illinois Proceeding") in which they seek – as they did in their Florida Proceeding, and as Doe does here – to execute on the Blocked Account and certain assets held by other garnishee banks.  Upon information and belief, third-party respondents Keith Stansell, Thomas Howes and Jonathan N. Janis are citizens of the State of Florida, Christopher T. Janis is a citizen of the State of New York, Marc Gonsalves is a citizen of the State of Connecticut, Judith G. Janis and Michael I. Janis are citizens of the State of Alabama, and Greer C. Janis is a citizen of the Commonwealth of Virginia.

45. Third-party respondent Antonio Caballero ("Caballero") is the plaintiff in an action entitled <u>Antonio Caballero v. Fuerzas Armadas Revolucionarias de Colombia, et al.</u>, No. 12-48803-CA-02, in the 11th Circuit Court for the State of Florida, Miami-Dade County, in which he recovered a judgment, entered on November 18, 2014, in the amount of $191,433,485.56 against, among others, the FARC and ELN.  Upon information and belief, Caballero is a citizen of Colombia and a resident alien of the United States.

46. Upon information and belief, third-party respondent Grupo Arposfran Emre Particacoe (a/k/a Grupo Arosfran Empreendimentos e Participacoes S.A.R.L.) (referred to above and hereafter as "Grupo") is a corporation or other legal entity organized under the laws of Angola with its principal place of business in Angola.  Grupo has been designated by OFAC as an SDGT and was found by the court in the Stansells' Florida Proceeding, though before Grupo appeared in that proceeding, to be an instrumentality of the FARC within the meaning of TRIA § 201(a).  Grupo, however, which recently appeared in the Stansells' Florida Proceeding and has also appeared in the Illinois Proceeding, disputes that it is an instrumentality of the FARC.  As discussed below, Grupo was a party to the wire transfer underlying the Blocked Account.

11

47. Upon information and belief, third-party respondent Ovlas Trading, S.A. (referred to above and hereafter as "Ovlas") is a corporation or other legal entity organized under the laws of Lebanon, with its principal place of business in Lebanon. Ovlas has been designated by OFAC as an SDGT and was found by the court in the Stansells' Florida Proceeding, though before Ovlas appeared in that proceeding, to be an instrumentality of the FARC within the meaning of TRIA § 201(a). Ovlas, however, which recently appeared in the Stansells' Florida Proceeding and has also appeared in the Stansells' Illinois Proceeding, disputes that it is an instrumentality of the FARC. As discussed below, Ovlas was a party to the wire transfer underlying the Blocked Account.

48. Upon information and belief, third-party respondent Banco Africano de Investimentos, Angola ("Banco Africano") is a bank organized and existing under the laws of Angola, with its principal place of business in Luanda, Angola. As discussed below, Banco Africano was a party to the wire transfer underlying the Blocked Account.

49. Upon information and belief, third-party respondent Standard Chartered Bank ("SCB"), is a bank organized and existing under the laws of the United Kingdom, with its principal place of business in London, England. As discussed below, SCB was a party to the wire transfer underlying the Blocked Account.

50. Bank Audi S.A.L. ("Bank Audi"), a bank organized and existing under the laws of Lebanon with its principal place of business in Beirut, Lebanon, was also a party to the wire transfer underlying the Blocked Account, having been the bank for the beneficiary of the wire transfer, Ovlas. But under *Calderon-Cardona* and *Hausler*, Bank Audi, as a beneficiary's bank, has no claim to the funds in the Blocked Account and has accordingly not been named a third-party respondent in this interpleader proceeding.

D.     Facts Common to All Counterclaims and Third-Party Claims

   (i)    The Blocked Account

   51.    The Blocked Account was established on or about October 13, 2009, after BNY Mellon blocked a wire transfer, in the amount of $2,503,498, pursuant to sanctions regulations, 31 C.F.R. § 594.310, issued by OFAC and applicable to persons or entities designated by OFAC as an SDGT.  The Blocked Account, whose account number ends in 8400, holds as of the time of this third-party petition approximately $2,506,421.  The Blocked Account is located in Oriskany, New York, outside Syracuse, where it has been and continues to be maintained by BNY Mellon's OFAC sanctions compliance group.

   52.    The parties to the blocked wire transfer underlying the Blocked Account were the following:  Grupo, as the originator; Banco Africano, as the originator's bank; SCB, as Banco Africano's correspondent bank; BNY Mellon, as an intermediary bank; Olvas, as the beneficiary; and Bank Audi, as the beneficiary's bank.  Because Grupo and Olvas had been designated as SDGTs by the time of the wire transfer, their presence in the wire transfer chain triggered BNY Mellon's block of the wire transfer in accordance with OFAC's sanctions regulations applicable to SDGTs.

   (ii)   Petitioner's Claim to the Funds in the Blocked Account

   53.    Upon information and belief, Doe obtained the Judgment against the FARC and ELN on January 5, 2012 in his action in the United States District Court for the Southern District of Florida entitled John Doe v. Ejercito de Liberacion Nacional, et al., No. 10-21517-CIV-HUCK.  The Judgment was entered under the Alien Tort Statute, 28 U.S.C. § 1350, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.  As of the time of

this third-party petition, the Judgment, which the judgment debtors have not voluntarily paid, remains unsatisfied.

54.     On or about June 3, 2015, Doe registered the Judgment in the Northern District of New York in this proceeding.  On or about August 28, 2015, the NDNY Marshal served a writ of execution on BNY Mellon as part of Doe's effort to enforce the Judgment.  On August 24, 2015, Doe filed the Petition under Fed. R. Civ. P. 69 and CPLR §§ 5225(b), seeking an order directing BNY Mellon to turn over to him the funds in the Blocked Account.

(iii)     The Stansell Respondents' Claims to the Blocked Account

55.     Upon information and belief, on June 15, 2010, the Stansell Respondents obtained a judgment against the FARC and others in the amount of $318,030,000 in the Stansells' Florida Proceeding.  Upon information and belief, as of the time of this third-party petition, the Stansells' judgment against the FARC has been only partially satisfied.

56.     On or about March 27, 2015, the Stansells served a writ of garnishment upon BNY Mellon in the Stansells' Florida Proceeding.  As noted, by order dated July 22, 2015, the court in that proceeding ruled that it lacked *in rem* jurisdiction over the Blocked Account and other assets located outside Florida and vacated writs of garnishments that the Stansells had previously served on BNY Mellon and other garnishee banks.  The Stansells then commenced the Illinois Proceeding, in which they, like Doe in this Court, seek to execute on the Blocked Account and certain blocked accounts held by other garnishee banks.  The Stansells served a third-party citation on BNY Mellon on or about August 5, 2015, and filed a motion in the Illinois Proceeding on August 30, 2015 for the turnover of the funds in the Blocked Account.  As of the time of this third-party petition, that turnover motion is still pending, and BNY Mellon will be moving in the Illinois Proceeding by September 25, 2015 to transfer that proceeding to this

Court, stay it pending the outcome of this interpleader proceeding, or dismiss it for lack of *in rem* jurisdiction.

   (iv)  <u>Caballero's Possible Claims to the Blocked Account</u>

  57.  Upon information and belief, on November 18, 2014, Caballero obtained a judgment against the FARC, in the amount of $191,433,485.56, in his action in the 11th Circuit Court for the State of Florida. Upon information and belief, as of the time of this third-party petition, Caballero's judgment remains unsatisfied.

  58.  As of the time of this third-party petition, Caballero has not served BNY Mellon with a writ of execution or comparable lien that covers the Blocked Account. It follows that, vis-à-vis either Doe or the Stansell Respondents, Caballero is unlikely to have priority for purposes of executing on the Blocked Account. BNY Mellon has nonetheless named Caballero as a third-party respondent to ensure that Caballero is fully covered by any discharge that may at some future time be entered in this proceeding.

   (v)  <u>Grupo's and Ovlas's Claims to the Blocked Account</u>

  59.  As noted, both Grupo and Ovlas dispute that they are SDGTs or instrumentalities of the FARC and contend, accordingly, that the Blocked Account is not subject to execution under TRIA § 201(a) because it is not, they say, an asset of the FARC or an instrumentality thereof. Both Grupo and Ovlas objected in the Stansells' Florida Proceeding to the turnover of the funds in the Blocked Account to the Stansells, and both have appeared in the Stansells' Illinois Proceeding and are expected to move to transfer, stay or dismiss that proceeding. Both have also appeared in this case and are expected to seek a judicial determination, after a hearing, that they are not instrumentalities of the FARC and should have the funds in the Blocked Account returned to them.

(vi)    The Interests of SCB and Banco Africano in the Blocked Account

60.    The two remaining third-party respondents, SCB and Banco Africano, have been named as respondents in light of their respective positions as parties to the blocked wire transfer underlying the Blocked Account.  Banco Africano was the bank for the originator of the wire transfer (Grupo), and SCB served as Banco Africano's correspondent bank and is the party to the wire transfer that immediately preceded BNY Mellon in the wire transfer chain.

61.    Although Banco Africano has not, to date, made a claim to the Blocked Account of which BNY Mellon is aware, it could nonetheless conceivably do so.  SCB, meanwhile, as the party to the wire transfer that directly transmitted the blocked funds to BNY Mellon, as the intermediary bank, is the sole entity that has an ownership interest in the Blocked Account under the law as established by the Second Circuit in *Calderon-Cardona* and *Hausler*.

*     *     *

62.    Because of Doe's and the third-party respondents' existing and prospective claims to the funds in the Blocked Account, and all the more so because the Stansells have commenced turnover proceedings in a separate forum in Illinois, BNY Mellon is being exposed to conflicting claims, to vexatious and burdensome litigation in different courts and different proceedings, to the attendant risk of inconsistent rulings, and ultimately to the prospect of double or multiple liability as to the same blocked asset.

63.    Under these circumstances, this interpleader proceeding is the most effective and cost-effective means by which all interested parties can be brought before one Court, a single determination can be made as to who, if anyone, is entitled to the funds in the Blocked Account, and BNY Mellon, if directed to turn over those funds, can receive a discharge from further

liability as to the Blocked Account that is binding on all interested parties and not subject to future attack.

FIRST COUNTERCLAIM AND FIRST
THIRD-PARTY CLAIM:  FOR INTERPLEADER RELIEF

64. BNY Mellon repeats and realleges the allegations in paragraphs 1 through 63 above as if they were set forth here in full.

65. Petitioner has commenced this action seeking a turnover order under TRIA, Fed. R. Civ. P. 69 and CPLR § 5225(b) directing that BNY Mellon turn over to him the funds in the Blocked Account.  The Stansell Respondents have similarly moved for a turnover order in their Illinois Proceeding seeking, under Illinois enforcement procedures, the exact same result.  Both Petitioner and the Stansell Respondents therefore have claims to the Blocked Account within the meaning of Fed. R. Civ. P. 22.  Caballero, as a judgment creditor of the FARC, could also conceivably assert a claim to the Blocked Account.

66. Grupo and Ovlas have also asserted claims to the Blocked Account, within the meaning of Rule 22, insofar as they assert that they are neither SDGTs nor instrumentalities of the FARC, that the funds in the Blocked Account are as a result not subject to execution under TRIA or any other statute or rule, and that the funds should therefore be returned to them.  Banco Africano and SCB also have a possible interest in the Blocked Account in their capacity as upstream parties to the blocked wire transfer underlying the Account.  Under *Calderon-Cardona* and *Hausler*, SCB's interest in the Blocked Account is, in fact, superior to that of any person or entity insofar as it was the entity that directly transmitted the wire transfer funds to BNY Mellon.

67. BNY Mellon itself is a neutral stakeholder and takes no position on which, if any, of the parties at issue has the superior claim to the funds in the Blocked Account.  But because BNY Mellon is subject to conflicting claims, it is exposed to the risk of multiple and inconsistent

liability and is accordingly entitled to interpleader relief bringing Doe and the third-party respondents before the Court and requiring them to litigate here their respective claims to the Blocked Account.

68.     BNY Mellon is ultimately entitled to an order (i) determining which, if any, of the parties at issue is entitled to the funds in the Blocked Account; (ii) in the event those funds are directed to be turned over, discharging BNY Mellon from any further liability with respect to the Blocked Account; and (iii) restraining and enjoining Doe and the third-party respondents from instituting or prosecuting any future proceeding, in any jurisdiction, with respect to the Blocked Account.

69.     BNY Mellon is also entitled, as a neutral stakeholder, to its attorneys' fees and costs incurred in connection with this interpleader proceeding and the judgment enforcement efforts of Doe and the Stansell Respondents.  Any such attorneys' fees and costs are to be awarded out of the funds in the Blocked Account that may be turned over, to Doe or anyone else, under any judgment entered in this action.

WHEREFORE, BNY Mellon requests the entry of a judgment as follows:

a.     Dismissing the Petition in its entirety;

b.     Determining the rights, if any, of Doe and the third-party respondents to the funds in the Blocked Account;

c.     Determining that service of this third-party petition, the third-party summons, and other relevant documents upon the third-party respondents constitutes good and sufficient service under CPLR § 5239 and any other applicable provision of law;

d.     Determining that this Court has subject matter jurisdiction, personal jurisdiction and *in rem* jurisdiction over Doe, the third-party respondents, and the Blocked Account to the

extent necessary to determine the parties' respective rights with respect to the funds in the Blocked Account;

  e. Determining (i) whether the Blocked Account is subject to execution under existing law in the Second Circuit as established in *Calderon-Cardona* and *Hausler*; (ii) whether Grupo and Ovlas are instrumentalities of the FARC, and therefore whether the Blocked Account is an asset subject to execution under TRIA; (iii) if the Blocked Account is subject to execution, whether Doe or one of the third-party respondents has priority for purposes of executing on the Blocked Account;

  f. Discharging BNY Mellon from any and all liability to Doe, the third-party respondents, and all other persons and entities with respect to the funds in the Blocked Account to the extent those funds are ordered to be turned over to any one or more of those parties;

  h. Permanently restraining and enjoining Doe, the third-party respondents, and all other persons and entities from instituting or prosecuting any proceeding, in any jurisdiction, as to any of the funds in the Blocked Account that BNY Mellon is ordered to turn over to any party;

  i. Awarding BNY Mellon its costs and expenses, including reasonable attorneys' fees, incurred in connection with this third-party proceeding and the judgment enforcement efforts of Doe and the Stansell Respondents; and

  j. Awarding BNY Mellon such other and further relief as may be just and proper.

Dated: New York, New York  
    September 18, 2015

LEVI LUBARSKY FEIGENBAUM
& WEISS LLP

By: s/Steven B. Feigenbaum
    Steven B. Feigenbaum
Bar Number: 519592
655 Third Avenue, 27th Floor
New York, New York 10017
(212) 308-6100 (telephone)
(212) 308-8830 (facsimile)
sfeigenbaum@llfwlaw.com
*Attorneys for Respondent/Third-Party Petitioner*
*The Bank of New York Mellon*