UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CASE NO. 15-mc-00023-GLS-CFH

JOHN DOE,

    Plaintiff/Judgment Creditor,

v.

EJERCITO DE LIBERACION NACIONAL,
a/k/a ELN, a/k/a National Liberation Army,
and FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
a/k/a FARC, a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA,

    Defendants/Judgment Debtors, and

BANK OF NEW YORK MELLON,

    Respondent.
_____/

**THIRD-PARTY CLAIMANTS GRUPO AROSFRAN EMPREENDIMENTOS E PARTICIPACOES SARL'S AND OVLAS TRADING, S.A.'S MOTION TO STRIKE PLAINTIFF JOHN DOE'S EXPERT AFFIDAVIT**

    Third-Party Claimants Grupo Arosfran Empreendimentos E Participacoes SARL ("Grupo Arosfran") and Ovlas Trading, S.A. ("Ovlas Trading") (collectively, "Claimants") hereby move to strike Plaintiff John Doe's Expert Affidavit submitted by David L. Gaddis, DE 8, Exhibit B (hereinafter, "Gaddis Affidavit"), pursuant to F.R.E. 702-703, 28 C.F.R. § 16.22; 18 U.S.C. § 207; 5 C.F.R. § 2635.703; and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), on the grounds that it violates federal law applicable to Mr. Gaddis' post-government employment restrictions, as well as restrictions on the use of Department of Justice and non-public information based upon government employment, and because it fails to satisfy the federal rules for experts under *Daubert*.

**TABLE OF CONTENTS**

I. Introduction ...........................................................................................................................1

II. Mr. Gaddis' affidavit should be excluded because he is prohibited by federal law from offering an opinion in this case ...................................................................................2

    A. Mr. Gaddis' testimony violates post-government employment restrictions ............3

    B. Mr. Gaddis' testimony violates laws prohibiting disclosure of internal Department of Justice and non-public information .................................................7

III. Mr. Gaddis' affidavit should be excluded for the additional reason that it fails to satisfy the *Daubert* requirements ........................................................................................8

    A. Mr. Gaddis' testimony should be excluded because it lacks a factual basis ............9

    B. Mr. Gaddis' unfounded legal opinions must also be excluded ..............................13

IV. Conclusion ..........................................................................................................................14

- ii -

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chuyon Yon Hong v. Mukasey*,
 518 F.3d 1030 (9th Cir. 2008) ................................................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993) ................................................................................................................2

*EEOC v. Exxon Corp.*,
 202 F.3d 755 (5th Cir. 2000) ...............................................................................................2, 6

*Gulf Grp. Gen. Enterprises Co. W.L.L. v. United States*,
 98 Fed. Cl. 639 (2011) ............................................................................................................5

*In re Boeh*,
 25 F.3d 761 (9th Cir. 1994) ....................................................................................................6

*In re Rezulin Prod. Liability Litig.*,
 309 F.Supp.2d 531 (S.D.N.Y. 2004)……………………………………………………….8

*Nimely v. City of New York,*
 414 F.3d 381 (2d Cir. 2005)………………………………………………………..........8

*United States v. Rosen*,
 599 F. Supp. 2d 690 (E.D. Va. 2009) .....................................................................................4

**Federal Statutes**

18 U.S.C. § 207...............................................................................................................2, 3, 4, 5, 6

Pub. L. No. 107-297.........................................................................................................................1

**Rules**

F.R.E. 702-703.................................................................................................................................2

**Regulations**

5 C.F.R. § 2635.703..........................................................................................................................6

5 C.F.R. § 2641.201 ...............................................................................................................3, 4, 6

28 C.F.R. § 16.22..............................................................................................................................6

31 C.F.R. § 501.605..........................................................................................................................4

ActiveUS 149301330v.3

**Other Authorities**

S.Rep. No. 170, 95th ............................................................................................................. 3

ActiveUS 149301330v.3

**MEMORANDUM OF LAW**

**I.      Introduction**

In this litigation, Claimants are the owners of the assets in question, which are held at Bank of New York Mellon ("BNYM").  C.P.L.R. § 5225(b).  It is undisputed that Plaintiff John Doe holds no judgments against Claimants.  Instead, Plaintiff seeks the turnover of Claimants' funds under the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, to satisfy a judgment Plaintiff obtained against an unrelated entity, a Colombian narco-trafficking terrorist organization known as the Revolutionary Armed Forces of Colombia-People's Army (the "FARC").  It is undisputed, however, that Claimants do not belong to the FARC; and Claimants have never had any relationship with the FARC.  Claimants' funds should therefore not be used to satisfy Plaintiff's judgment against the FARC.

Plaintiff's theory is that Claimants belong to a different terrorist organization known as Hezbollah, which, in turn, allegedly is an "agency or instrumentality" of the FARC, and, therefore, that Plaintiff can treat Claimants themselves as agencies or instrumentalities of the FARC for purposes of enforcing against Claimants the judgment that Plaintiff obtained against the FARC.

As described at length in Claimants' brief filed today in opposition to Plaintiff's Petition for Turnover, DE 8, Plaintiff's theory fails for three reasons.  *First*, Claimants have no relationship with Hezbollah.  *Second*, Hezbollah is not an agency or instrumentality of the FARC.  *Third*, even if Plaintiff could carry his burden of proving both of those allegations, it still would not meet his burden of proving that each Claimant itself is an agency or instrumentality of the FARC.  The Petition should therefore be dismissed.  In the alternative, the Claimants respectfully request a trial to resolve these issues, as required by N.Y. C.P.L.R. §§ 5225, 5239 ("Where there appear to be disputed questions of fact, the court shall order a separate trial.").

- 1 -

ActiveUS 149301330v.3

To advance his theory, Plaintiff relies nearly exclusively on an Office of Foreign Assets Control ("OFAC") designation of Claimants, but such designation only serves as evidence that the assets in question have been blocked by OFAC, which is not in dispute.  To support the remaining aspects of his theory—which requires first connecting Claimants to Hezbollah, and then connecting Hezbollah to the FARC, and then using Hezbollah as some kind of transitive connection between Claimants and the FARC—Plaintiff relies solely on an affidavit submitted by Mr. David L. Gaddis, who admits to having no particular knowledge or expertise regarding Claimants or Hezbollah.

The Gaddis Affidavit falls far short of the requirements for expert testimony and should be excluded  as a violation of Mr. Gaddis' post-government employment restrictions, as well as restrictions on the use of Department of Justice and non-public information based upon government employment.  F.R.E. 702-703; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *EEOC v. Exxon Corp.*, 202 F.3d 755, 757-59 (5th Cir. 2000) (testimony excludable for violation 18 U.S.C. § 207).  It should also be excluded, in part or in whole, because, as series of *ipse dixit* findings, it lacks any reliable basis and fails to assist the trier of fact.  Finally, aspects of the affidavit should be struck because they constitute impermissible legal conclusions.

For these reasons and as set forth below in detail, Claimants respectfully request that the Court strike the flawed Gaddis Affidavit from the record in this litigation.

## II.     Mr. Gaddis' affidavit should be excluded because he is prohibited by federal law from offering an opinion in this case

Mr. Gaddis' affidavit should be excluded as a violation of Mr. Gaddis' post-government employment restrictions, as well as restrictions on the use of Department of Justice and non-public information based upon government employment.  F.R.E. 702-703; *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *EEOC v. Exxon Corp.*, 202 F.3d 755, 757-59 (5th Cir. 2000) (testimony excludable for violation 18 U.S.C. § 207).

### A. Mr. Gaddis' testimony violates post-government employment restrictions

Mr. Gaddis recently retired from the Drug Enforcement Administration ("DEA"), and his testimony violates well-known statutory restrictions on post-government employment. For example, 18 U.S.C. § 207(1) provides that:

> [a]ny person who is an officer or employee…of the executive branch of the United States…who, after the termination of his or her service or employment with the United States or the District of Columbia, knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States or the District of Columbia, on behalf of any other person (except the United States or the District of Columbia) in connection with a particular matter—(A) in which the United States or the District of Columbia is a party or has a direct and substantial interest, (B) in which the person participated personally and substantially as such officer or employee, and (C) which involved a specific party or specific parties at the time of such participation, shall be punished as provided in section 216 of this title."

The purpose of this statute is to prevent former government officers from utilizing "information on specific cases gained during government service for their own benefit and that of private clients", which is a form of "unfair advantage." S.Rep. No. 170, 95th Cong., 2d Sess. 31, reprinted in 1978 U.S. Code Cong. & Admin. News 4216, 4247. Indeed, as described below, Mr. Gaddis—now a private citizen—appears to be testifying on the findings of sensitive U.S. government investigations in which he played a personal role, *as if the testimony is coming from a current employee of the United States Government*. Such a conflation of roles—a private citizen testifying as to non-public findings gleaned from prior government services—is one of the very reasons why Congress adopted such statutory restrictions.

Mr. Gaddis' affidavit violates this restriction because he was an official from 1986 until "March 31" (presumably, 2015, but this is unclear) and has testified on issues in which he participated personally while in Government involving specific parties. DE 8, Gaddis Affidavit,

- 3 -

at 2-3, 30 ("I was involved in investigations by the DEA...[which] implicated Kassim Tajideen and companies associated with him.").

First, with respect to prong (A) of 18 U.S.C. § 207(1), the U.S. government clearly has "a direct and substantial interest" in this case. The case involves assets that have been blocked by and subject to the authority of OFAC, the key enforcement and regulatory body for U.S. sanctions programs. The implementing regulations for 18 U.S.C. § 207(1) make clear that a component of the U.S. government will have a "direct and substantial interest" where "[t]he matter is likely to have an effect on the policies, programs, or operations of the component" and where "[t]he component is involved in any proceeding associated with the matter, e.g., as by having provided witnesses or documentary evidence." 5 C.F.R. § 2641.201(j). In this case, OFAC designations are used as the principal "documentary evidence" by the Plaintiff, DE 8, Gaddis Affidavit, at 22. OFAC's substantial interest in such litigation is further evidenced by the unique requirement that all cases and all filings involving blocked assets must be notified to OFAC. 31 C.F.R. § 501.605 ("U.S. persons…participating in litigation…in the United States on behalf of or against persons whose property or interests in property are blocked…must…[p]rovide notice of such proceedings upon their commencement or upon submission or receipt of documents [and] [s]ubmit copies of all pleadings, motions, memoranda, exhibits, stipulations, correspondence, and proposed orders or judgments...to the Chief Counsel, Office of Foreign Assets Control, U.S. Department of the Treasury.") Indeed, Plaintiff acknowledged OFAC's direct and substantial interest in this case by certifying service to various OFAC officials of its motion for turnover order. DE 5 (certifying service to three U.S. Government officials).

Second, with respect to prong (B), Mr. Gaddis has clearly communicated to the Court[1] on matters in which he "participated personally and substantially as such officer or employee." 18 U.S.C. § 207(1)(B). In applying this prong, courts have suggested that "this prohibition is designed to prevent former government officials from using the specific knowledge—rather than any general expertise—obtained during their employment." *United States v. Rosen*, 599 F. Supp. 2d 690, 699 (E.D. Va. 2009). Here, Mr. Gaddis did not merely testify about his "general" expertise on drug trafficking but has offered evidence on *specific* investigations and enforcement actions with which he was involved. For example, Mr. Gaddis cited "[a] long DEA investigation, *in which I was involved* as the Chief of Enforcement Operations" and made representations about what "law enforcement began to observe," the contents of internal "law enforcement reports," and apparently nonpublic, confidential "information derived from cooperating sources." DE 8, Gaddis Affidavit, at 15 (emphasis added). Mr. Gaddis asserts his specific and personal role in the investigation of Kassim Tajideen, the owner of Claimants *in this case*: "*I was involved in investigations by the DEA*...[which] implicated Kassim Tajideen and companies associated with him." DE 8, Gaddis Affidavit, at 30 (emphasis added); *see also id.* at 23 ("*I was aware of* the investigation that lead [sic] to the designation of Kassim Tajideen….") (emphasis added).

Such assertions thus extend far beyond Mr. Gaddis' "general expertise" about the nature of narcotics trafficking and involve specific matters—investigations, intelligence reports and sourcing, and observations—in which he claims to have personally participated as a government employee, a clear violation of prong (B). *Gulf Grp. Gen. Enterprises Co. W.L.L. v. United States*, 98 Fed. Cl. 639, 645-46 (2011) ("the expert had participated personally and substantially

---

[1] A former employee makes a communication "when he imparts or transmits information *of any kind*, including facts, opinions, ideas…" 5 C.F.R. § 2641.201(d) (emphasis added).

- 5 -

in a particular matter and, thus, would have violated section 207(a)(1) had she testified as an expert on that same matter.")

Finally, with respect to prong (C), the specific investigations to which Mr. Gaddis testifies "involved a specific party or specific parties at the time of such participation." 18 U.S.C. § 207(1)(C). Indeed, Mr. Gaddis' testimony involved the specific Claimants *in this case*. DE 8, Gaddis Affidavit, at 30 ("I was involved in investigations by the DEA...[which] implicated Kassim Tajideen and companies associated with him."), 23 ("I was aware of the investigation that lead [sic] to the designation of Kassim Tajideen"). Mr. Gaddis' testimony meets all of the requirements to constitute a violation of his post-government employment restrictions under 18 U.S.C. § 207(1). These are "lifetime" restrictions that bar Mr. Gaddis forever from providing the testimony he provides in the Gaddis Affidavit here.

Furthermore, a completely separate, additional two-year restriction bars him from making "with the intent in influence, any communication to or appearance before any…court" in connection with a particular matter "which such person knows or reasonably should know was actually pending under his or her official responsibility as such officer or employee within a period of 1 year before the termination of his or her service or employment with the United States." 18 U.S.C. § 207(2). It is unclear whether Mr. Gaddis was aware of this litigation, when exactly he retired from the DEA (his affidavit only mentions "March 15"), or the extent to which the DEA may have been involved in the litigation, but Claimants intend to cross-examine Mr. Gaddis on potential violations of this restriction as well.

In the case of violations of 18 U.S.C. § 207(1) or (2), "[t]he court may issue an order prohibiting that person from engaging in such conduct if the court finds that the conduct constitutes such an offense." *Id*. at § 216(c) (in addition to criminal and civil penalties).

Claimants thus request that this Court strike Mr. Gaddis' report from the record.  *See EEOC*, 202 F.3d at 757-59 (expert witness' testimony could be excluded due to a violation of § 207).[2]

### B. Mr. Gaddis' testimony violates laws prohibiting disclosure of internal Department of Justice and non-public information

The Gaddis Affidavit further violates federal laws barring former Department of Justice ("DOJ") employees (the DEA is a component of the DOJ) from "disclos[ing] any information relating to or based upon material contained in the files of the Department, or disclos[ing] any information…acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official."  28 C.F.R. § 16.22.

Here, Mr. Gaddis has disclosed a variety of information "relating to or based upon material contained in [DOJ] files," apparently without authorization, providing further grounds to exclude his testimony.  According to Gaddis himself, the Gaddis Affidavit includes DOJ and DEA information about a "long DEA investigation," "law enforcement reports," and "information derived from cooperating sources."  DE 8, Gaddis Affidavit, at 15.  He also testifies as to the findings of specific investigations involving a Claimant in this case, as if he were testifying as a government witness.  DE 8, Gaddis Affidavit, at 30 ("I was involved in investigations by the DEA...[which] implicated Kassim Tajideen and companies associated with him.").  *In re Boeh*, 25 F.3d 761, 767 (9th Cir. 1994) ("The district court cannot confer authority…to testify or reveal information" under § 16.22).

Furthermore, Mr. Gaddis has also violated laws against the disclosure of  "nonpublic information" gleaned from his government service to further private interests.  For example, 5 C.F.R. § 2635.703 provides that one shall not engage "in a financial transaction using nonpublic information, nor allow the improper use of nonpublic information to further his own private

---

[2] The exception for "testifying under oath" is "not available for expert testimony." 5 C.F.R. § 2641.201(b)(4).

- 7 -

interest or that of another, whether through advice or recommendation, or by knowing unauthorized disclosure." Here, again, Mr. Gaddis has disclosed a variety of nonpublic information about a "long DEA investigation," "law enforcement reports," and "information derived from cooperating sources." DE 8, Gaddis Affidavit, at 15, 30 ("I was involved in investigations by the DEA...[which] implicated Kassim Tajideen and companies associated with him."). These violations provide further grounds to exclude his testimony. *Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030 (9th Cir. 2008) (regulations forbidding improper use of nonpublic information prevented government employees from profiting from such misuse).

For the reasons state above, Mr. Gaddis' testimony should be excluded from this litigation in its entirety as a violation of various well-known restrictions on post-government employment.

### III. Mr. Gaddis' affidavit should be excluded for the additional reason that it fails to satisfy the *Daubert* requirements

The Gaddis Affidavit falls far short of the requirements for expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) in several additional respects. Under Federal Rule of Evidence 702, "[a]witness who is qualified as an expert … may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Rule 702 reflects and refines principles set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, in which the Court held that for expert testimony to be admissible, the party proffering it must demonstrate: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusion is sufficiently reliable; and (3) the testimony assists the

- 8 -

trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  509 U.S. at 579

The Gaddis Affidavit should be excluded for its deficiencies under *Daubert* for a number of reasons.  *First*, the Gaddis Affidavit should be excluded because its factual basis is wholly insufficient and the conclusions are not properly substantiated.  Instead, the conclusions in the affidavit amount essentially to *ipse dixit* findings—a series of asserted opinions without any discernable basis in fact, or any means by which to test their reliability.  Courts have repeatedly deemed similarly unsubstantiated opinions inadmissible because they are unreliable and unhelpful to the trier of fact.

*Second*, and independent of the above grounds, Mr. Gaddis closes his affidavit with the bald legal conclusion that it is his "opinion that the the [sic] OFAC-designated individual and entities listed below are all agencies or instrumentalities of the FARC" within the meaning of TRIA.  Mr. Gaddis provides this legal opinion even though he is not a lawyer, not qualified as a legal expert, and offers no basis for the opinion.  Such bald legal conclusions offered without any relevant basis or expertise—or even any adequate explanation—are inadmissible under Rule 702 and *Daubert*.

A.   **Mr. Gaddis' testimony should be excluded because it lacks a factual basis**

Mr. Gaddis' affidavit should be excluded because it lacks a sound factual basis and is therefore unreliable and fails to assist the trier of fact under the second and third prongs of *Daubert*.

Courts routinely exclude as unreliable purported expert testimony that relies on unsupported assertions without sufficient basis in fact.  For example, in *Nimely v. City of New York*, the Second Circuit found that the expert was "driven by the need to find a way of explaining the admitted facts in light of his own instinct" and that "[s]uch a leap is the essence of

unverifiable subjectivity, amounting to the sort of *ipse dixit* connection between methodology and conclusion" that is readily excludable under F.R.E. 702.  414 F.3d 381, 399 (2d Cir. 2005) (internal citations omitted); *In re Rezulin Prod. Liability Litig.*, 309 F.Supp.2d 531, 540 (S.D.N.Y. 2004) ("A court may conclude that there simply is too great an analytical gap between the data and the opinion proffered.").

Here, Mr. Gaddis fails to provide any reliable data.  Moreover, he fails to provide citations to any reliable source material for his opinion regarding the purported connection between Hezbollah and the FARC, and Claimants and Hezbollah.  He fails to offer any information whatsoever regarding the only alleged connection relevant to this case, *i.e.*, the completely unsubstantiated, alleged connection between Claimants and the FARC.  When those dubious and unsupported assertions are disregarded, there is nothing left in Mr. Gaddis' affidavit that even purports to connect Claimants to the FARC.

Moreover, Gaddis's bald assertions about the alleged connections between Hezbollah and the FARC also lack an evidentiary basis.  For example, in paragraph 11, he asserts without citation or basis that the FARC "is intricately linked with Hezballah."  Likewise, in paragraphs 12-13, he makes a number of vague and idiomatic assertions (again without any citations or bases) as to the FARC and Hezbollah, such as that "[t]heir ideological outlooks complement each other", that "[t]hey display the same anti-Americanism", that the FARC and Hezbollah are "central players" in "anti-American movements", that they are "comrades in arms" and have "common goals."  He fails to explain or provide factual bases or citations for such assertions.  As Claimants' own expert Dr. Warde has explained in his Expert Report submitted to the Court today, Hezbollah and the FARC have no direct and meaningful relationship, in part because they are such geographically distinct and ideologically disparate organizations with completely different cultures, philosophies, languages, histories, purposes, goals, strategies, and tactics.

- 10 -

In addition, at paragraph 28, Mr. Gaddis asserts that "Congress has conducted numerous hearing [sic] setting forth that Hezballah is heavily involved in the global cocaine trade" and that Hezbollah exchanges "lessons learned" with the FARC. But "Congress" has never found or suggested that Hezbollah and the FARC are part of the same organization, much less that Claimants have anything whatsoever to do with the FARC. Tellingly, Gaddis fails to provide any substantiation as to what Committees or Congressional officials offered such conclusions. At paragraph 29, he purports to quote from a single excerpt of a Congressional report noting "collaborations between Iran, Venezuela, Hezballah and transnational criminal organizations," but this excerpt says nothing about the FARC. Yet, Gaddis then offers his own editorial to the report—without any basis or explanation—that "[t]he transnational criminal organizations include, of course, the FARC."

Such bald assertions, without factual basis, fail to meet the federal requirements for experts under *Daubert* and Rule 702. Accordingly, Mr. Gaddis' ultimate conclusion, that Hezbollah's alleged relationship with the FARC supposedly is sufficient to render the former an "agency or instrumentality" of the latter, is nothing more than an inadmissible *ipse dixit* opinion, which must be disregarded or stricken from the record. *See Nimely*, 414 F.3d at 399.

In any case, much of Mr. Gaddis' affidavit *directly contradicts* his proffered, unsubstantiated conclusion. For example, at paragraph 35, the Gaddis Affidavit states that "[i]n 2008 alone, Iran provided hundreds of millions of dollars to Hizballah and trained thousands of Hizballah fighters at camps in Iran. Iran continues to assist Hizballah in rearming, violating Security Council resolution 1701." In the same paragraph, the Gaddis Affidavit notes that Hezballah "reconstituted and improved its arsenal" and that "this would have undoubtedly been accomplished by means of smuggling activity via Syria and Iran." The paragraph continues that "Iran continues to provide a significant portion of Hizballah's funding."

- 11 -

This testimony is significant for two reasons.  First, the precision of detail offered by Mr. Gaddis as to the Iran-Hezbollah connection—arguably akin to a principal-agent relationship—pales in comparison to the vague, attenuated, unsubstantiated testimony regarding the alleged Hezbollah-FARC connection that he attempts to create without any factual bases.  *See, e.g.*, DE 8, Gaddis Affidavit, at 12-13 (noting ambiguously with respect to Hezbollah and the FARC that their "ideological outlooks complement each other"; "[t]hey display the same anti-Americanism"; they are "comrades in arms"; and they have "common goals.").  This disparity—and lack of concrete evidence connecting Hezbollah to the FARC—merely serves to highlight the flimsy and unreliable nature of his bald assertions regarding the alleged connections between Hezbollah and the FARC.

Second, these facts offered by Mr. Gaddis further undermine his opinion by suggesting a completely different conclusion, namely, that Hezbollah is an agency or instrumentality of *Iran*, not the FARC.  Indeed, it is well-recognized that Hezbollah is an Iranian proxy, largely controlled by Iran, with an Islamist ideology and goals that closely resemble those of its Iranian patron.  The Gaddis Affidavit recognizes the closeness and importance of this relationship, but then fails to explain how an Iranian proxy could ever be deemed to be part of a completely unrelated Colombian narco-trafficking organization.  As these issues demonstrate, Mr. Gaddis' affidavit is "so riddled with factual inaccuracies and unproven assumptions that no reasonable [finder of fact] could give his opinion credence." *Whiting v. Boston Edison Co.*, 891 F.Supp. 12, 19 (D. Mass.1995).  Mr. Gaddis' vague and unsupported testimony purporting to link Hezbollah to the FARC cannot assist a trier of fact in determining whether any such connection actually exists, because "there is simply too great an analytical gap between the data and the opinion proffered." *Owaki v. City of Miami*, 91 F.Supp.2d 1140, 1160-61 (S.D. Fla. 2007) (internal citations omitted).  Mr. Gaddis' affidavit therefore should be excluded.

- 13 -

### B. Mr. Gaddis' unfounded legal opinions must also be excluded

On the basis of the unsound methodology and plainly insufficient factual foundation described above, the Gaddis Affidavit concludes that "it is [his] opinion that the the [sic] OFAC-designated individual and entities listed below are all agencies or instrumentalities of the FARC," for purposes of TRIA, *see* DE 8, Gaddis Affidavit, at 30, but this is nothing but an unfounded legal opinion. As such, it is improper under *Daubert* and Rule 702 and must be stricken from the record.

Courts have regularly held that proffered expert evidence that amounts to a legal conclusion offered without discernable basis is inadmissible. For example, in *In re Rezulin Products Liability*, the court excluded testimony made by a non-lawyer because it "impermissibly embraces a legal conclusion" and "usurp[s]…the role of the trial judge in instructing the jury." 308 F.Supp.2d at 547; *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 646 (7th Cir. 2011) (expert properly excluded where testimony went beyond scope of witness's expertise); *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005) (doctor's opinion concerning a violation of constitutional rights "is a purely legal conclusion and is presented without any supporting factual basis. The trial court therefore acted well within its discretion in excluding it."). Relatedly, it is also improper for a non-lawyer expert to simply do what a lawyer might do in closing argument – review the documents in evidence and tell the jury what they say, combined with an argument as to what they mean. *See U.S. v. Frazier,* 387 F.3d 1244, 1262-63 (11th Cir. 2004) ("[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments"); *Toler v. Engelhard Corp.*, 2006 U.S. Dist. LEXIS 23297, 29-30 (M.D. Ga. Mar. 20, 2006) ("[The expert's] legal opinion that Defendant breached the Lease … is a purely legal conclusion

- 14 -

and was presented without any supporting factual basis.  Because this opinion merely tells the Court or the jury what result to reach, it is not helpful, and is therefore inadmissible.").

This is precisely the problem with the Gaddis Affidavit – it offers argument without factual basis followed by a legal conclusion that merely tells the Court what result to reach.  Indeed, in his conclusion, Mr. Gaddis simply recites the final legal conclusion that Claimants and others qualify as agencies or instrumentalities of the FARC.  He provides no explanation for his understanding of the meaning of these terms, much less how a series of unsubstantiated assertions of fact could ever add up to a conclusion of law.  This portion of his affidavit should therefore be excluded for this additional reason.

## IV. Conclusion

WHEREFORE, for the reasons set forth above, the Claimants move the Court to strike and exclude testimony by Mr. Gaddis.

- 15 -

Respectfully submitted,

/s/ David W. Bowker
David W. Bowker
New York Bar No. 4200184
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6558
Facsimile:  (202) 663-6363
David.Bowker@wilmerhale.com

Attorney for Grupo Arosfran
Empreendimentos E Participacoes SARL and
Ovlas Trading, S.A.

- 16 -

**CERTIFICATE OF SERVICE**

I CERTIFY that on the 11th day of November, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ David W. Bowker
Attorney

ActiveUS 149301330v.3

- 16 -

**CERTIFICATE OF SERVICE**

I CERTIFY that on the 11th day of November, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ David W. Bowker
Attorney